# EXHIBIT
# 18



# In re Charles Funk

## Race Discrimination and Retaliation Complaint Reported on or about April 12, 2016

# FOSTER SWIFT

FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

Lansing | Farmington Hills | Grand Rapids | Detroit | Holland | St. Joseph

| | | |
|---|---|---|
| **Lansing**<br>313 S. Washington Square<br>Lansing MI 48933 | **Farmington Hills**<br>32300 Northwestern Highway – Suite 230<br>Farmington Hills MI 48334 | **Grand Rapids**<br>1700 E. Beltline NE – Suite 200<br>Grand Rapids MI 49525 |
| **Detroit**<br>333 W. Fort Street – Suite 1400<br>Detroit MI 48226 | **Holland**<br>151 Central Avenue – Suite 260<br>Holland MI 49423 | **St. Joseph**<br>728 Pleasant Street – Suite 204<br>St. Joseph MI 49085 |

Walter S. Foster
 1878-1961
Richard B. Foster
 1908-1996
Theodore W. Swift
 1928-2000
John L. Collins
 1926-2001

Webb A. Smith
Allan J. Claypool
Gary J. McRay
Stephen I. Jurmu
Scott A. Storey
Charles A. Janssen
Charles E. Barbieri
James B. Jensen, Jr.
Scott L. Mandel

Michael D. Sanders
Brent A. Titus
Stephen J. Lowney
Jean G. Schtokal
Brian G. Goodenough
Matt G. Hrebec
Melissa J. Jackson
Nancy L. Kahn
Deanna Swisher
Thomas R. Meagher
Doug A. Mielock
Scott A. Chernich
Paul J. Millenbach
Dirk H. Beckwith
Brian J. Renaud
Bruce A. Vande Vusse
Lynwood P. VandenBosch
Lawrence Korolewicz

James B. Doezema
Anna M. Maurycok
Richard L. Hillman
Steven L. Owen
John P. Nicolucci
Michael D. Homier
David M. Lick
Scott H. Hogan
Richard C. Kraus
Benjamin J. Price
Frank T. Mamat
Michael R. Blum
Norman E. Richards
Jonathan J. David
Frank H. Reynolds
Pamela C. Dausman
Andrew C. Vredenburg
John M. Kamins

Jack A. Siebers
Julie I. Fershtman
Todd W. Hoppe
Jennifer B. Van Regenmorter
Thomas R. TerMaat
Samuel J. Frederick
Frederick D. Dilley
Alexander A. Ayar
David R. Russell
Zachary W. Behler
Joshua K. Richardson
Joel C. Farrar
Seth A. Drucker
Laura J. Genovich
Lisa C. Moore
Karl W. Butterer, Jr.
Lisa J. Hammamah
Mindi M. Johnson

Ray H. Littleton, II
Frank J. DeFrancesco
Scott A. Dienes
Jack L. Van Coevering
Glen A. Schmiege
Gilbert M. Frimet
Mark J. Colon
Paul D. Yared
Ryan E. Lamb
Barbra E. Homier
Stephen W. Smith
Anna K. Gibson
Patricia J. Scott
Lindsey E. Bosch
Nicholas M. Oertel
Lauren B. Dunn
Alicia W. Birach
Joseph J. Viviano

John W. Mashni
Adam A. Fadly
Allison M. Collins
Leslie A. Dickinson
Julie L. Hamlet
Emory D. Moore
Michael C. Zahrt
Taylor A. Gast
Rachel N. Olsziki
Tyler J. Olney
Mark J. DaLuca
Stefania Gismondi

**Writer's Direct Phone:** 517.371.8163    **Fax:** 517.367.7163    **Reply To:** Lansing    **E-Mail:** PDausman@fosterswift.com

May 26, 2016

*CONFIDENTIAL/SUBJECT TO ATTORNEY-
CLIENT PRIVILEGE*

Mary P. Riley, MPA, SPHR, SHRM-SCP
Director of Human Resources
City of Lansing
124 W. Michigan
City Hall - 8th Floor
Lansing, MI 48933

Dear Ms. Riley:

RE: *In re Charles Funk Investigation*

Attached for your review is the Confidential Report regarding my investigation of Sergeant Charles Funk's complaint received by your office on or about April 12, 2016. This Report should remain confidential and should not be distributed to anyone in the Lansing Police Department. A copy of the documents relied on during the investigation is also included for your records. I also provide an additional copy of this Confidential Report for Mr. Abood's review.

# FOSTER SWIFT
FOSTER SWIFT COLLINS & SMITH PC || ATTORNEYS

Page 2

In the event you have any questions or concerns, please contact me directly.  Foster, Swift, Collins & Smith, P.C. appreciates the opportunity to assist the City in this matter.

Sincerely,

FOSTER SWIFT COLLINS & SMITH PC

Pamela C. Dausman

Pamela C. Dausman

PCD/pmb
Enclosures
cc w/enc:      F. Joseph Abood
               Nicole Malson

# MEMO



**Confidential and Privileged –**
**Not to Be Distributed**

**TO:**      Mary P. Riley, MPA, SPHR, SHRM-SCP

**CC:**      F. Joseph Abood

**FROM:**    Pamela C. Dausman

**DATE:**    May 26, 2016

**RE:**      *In re Charles Funk Race Discrimination and Retaliation Complaint Reported*
             *on or about April 12, 2016*

## INTRODUCTION

Sergeant Charles Funk reported in early April 2016, that Chief Michael Yankowski's decision to promote Sergeants Rodney Anderson and Robert Backus to Lieutenant and the decision not promote Sergeant Funk was based on his race (African-American). **(Tab 1).**[1] Sergeant Funk also claims that Chief Yankowski's decision is in retaliation for Sergeant Funk's previous complaints that he believed Lansing Police Officers treated citizens differently based on their race. **(Tab 1)**. Sergeant Funk reported his complaint to Mary P. Riley, Director of Human Resources at the City of Lansing. The City of Lansing asked Foster, Swift, Collins & Smith, PC to investigate Sergeant Funk's complaint of discrimination and retaliation. What follows is a report of the investigation, a determination, and recommendations for future action.

## COMPLAINT

Chief Yankowski advised Sergeant Funk on or about April 4, 2016, that he had awarded Sergeant Rodney Anderson and Sergeant Robert Backus promotions to the rank of Lieutenant. Chief Yankowski met with Sergeant Funk to advise that he would not be promoted at this time. Sergeant Funk claims that Chief Yankowski did not promote Sergeant Funk to Lieutenant due to his race and in retaliation for making previous complaints that Lansing Police Officers treated citizens differently based on their race.

Since the date of Sergeant Funk's initial complaint, Chief Yankowski promoted Sergeant David Sileo to Lieutenant. **(Tab 15)**. Chief Yankowski advised Sergeant Funk about this

---

[1] The materials referenced in this Report are included in the numbered Tabs in the binder provided with this Report.

promotion by phone on May 10, 2016. Sergeant Funk has not directly stated that the decision to promote Sergeant Sileo was discriminatory, but appears to now include that as part of his allegations. Additionally, Sergeant Funk has had several formal complaints asserted against him consisting of Class A and Class B violations. Internal Affairs investigated some of those complaints, resulting in sustained complaints of 1.10 - Unsatisfactory Performance, 1.38 - Use of Departmental Equipment, 1.52 - Conduct of Supervisors, and 1.01 - Violation of Rules. (Tabs 23 & 24). Internal Affairs is in the process of investigating another formal complaint. It is not known when that investigation will be concluded.

The City did not ask Foster, Swift, Collins & Smith, PC to investigate whether the promotion of Sergeant David Sileo is discriminatory, and we have not been notified that Sergeant Funk amended his report of discrimination with Ms. Riley or anyone else in the Human Resources Department to include Sergeant Sileo's promotion. As such, this report is limited to investigation of the decision to promote Sergeant Robert Backus and Sergeant Rodney Anderson.

**Involved Employees:**

Sergeant Charles Funk

Chief Michael Yankowski

Sergeant Rodney Anderson

Sergeant Robert Backus

**Individuals Interviewed:**

- Chief Michael Yankowski - April 26, 2016; May 20, 2016
- Sergeant Charles Funk - April 26, 2016. Sergeant Funk requested to meet with me on May 19, 2016, at 2:15 P.M. to provide additional documentation in support of his race discrimination and retaliation complaint. Sergeant Funk did not appear for the meeting. Approximately two hours later, Sergeant Funk contacted me to advise that something had come up and that he would be meeting with me on May 20, 2016, at 2:15 P.M., to provide the materials. On May 20, 2016, Sergeant Funk appeared at approximately 3:45 P.M. to provide the materials he referenced. Sergeant Funk did not give a reason for missing the meeting on May 19, 2016, or for appearing 1.5 hours late for the meeting on May 20, 2016.
- Captain Darin Southworth - May 4, 2016

- Lieutenant Traci Ruiz - May 4, 2016; May 26, 2016
- Captain James Kraus - May 10, 2016

Materials Reviewed in Connection with Investigation:

1) Sergeant Funk's Undated Complaint of Discrimination/Retaliation.

2) Agreement between the City of Lansing, Michigan, and the Capital City Lodge No. 141 for Internal Order for Police Lansing Police Supervisory Division - July 16, 2009, through July 15, 2015.

3) LPD Administrative Procedure - Complaint Procedure No. 200-7.

4) LPD Administrative Procedure - Discipline of Personnel No. 300-13.

5) LPD Rules of Conduct by Class of Offense.

6) Discipline Matrix Chart.

7) LPD Personnel Snapshot - April 1, 2016.

8) LPD 2008 Promotional Process Lieutenant

9) Lieutenant Scores for April 2010, through March 31, 2012.

10) 2014 Lieutenant Scores with 5 point seniority added.

11) A handwritten 2014 Lieutenant Promotional Chart showing the "A" Band and "B" Band. (Source of handwriting on the chart is unknown).

12) Chart showing Command Promotions from April 20, 2013, to May 28, 2016.

13) July 6, 2015, email from Sue Graham to Chief Yankowski advising which employees were in the next tier for Lieutenant promotions.

14) Training and Technical Services Posting 2016-17 dated April 6, 2016, Promotions and Transfers.

15) Training and Technical Services Posting 2016-26 dated May 10, 2016, promotions and transfers.

16) Sergeant Funk Promotional Review - April 2016.

17) Sergeant Funk's individual training record (excerpt).

18) Sergeant Funk's disciplinary history (excerpt).

19) Sergeant Funk's Field Training Book.

20) Sergeant Anderson's Promotional Review - April 2016.

21) Sergeant Anderson's individual training record.

22) Sergeant Backus's Promotional Review - April 2016.

23) Office of Internal Affairs Interoffice Memorandum regarding Internal Affairs investigation IA16-0018, dated May 17, 2016.

24) Office of Internal Affairs Interoffice Memorandum regarding Internal Affairs investigation IA16-0019, dated May 17, 2016.

25) Email from Adam Hussain to Chief Yankowski (then Captain) dated September 2, 2012.

26) Email from Adam Hussain to Chief Yankowski (then Captain) dated September 3, 2012.

27) Incident Report No. LLA140308001971 (unredacted copy)—initial report with handwritten questions and the final report with changes to charges and information related to Narrion Lamont Caston.

28) Email correspondence between Sergeant Funk and Chief Yankowski dated December 12, 2014.

29) Email from Sergeant Funk to Chief Yankowski dated January 15, 2015.

30) Email from Sergeant Funk to Chief Yankowski dated April 28, 2015.

31) Email from Sergeant Funk to Chief Yankowski dated March 12, 2016.

32) Email from Chief Yankowski to Sergeant Funk dated April 4, 2016.

33) Email from Sergeant Funk to Chief Yankowski dated April 5, 2016.

34) Email from Sergeant Funk to Pamela C. Dausman dated May 10, 2016.

35) Email from Sergeant Funk to Pamela C. Dausman dated May 12, 2016.

36) Email from Sergeant Funk to Pamela C. Dausman dated May 12, 2016.

37) Email from Chief Yankowski to Sergeant Funk, Sue Graham, and others dated May 12, 2016.

38) Email from Sergeant Funk to Pamela C. Dausman dated May 17, 2016.

39) Email from Sergeant Funk to Pamela C. Dausman dated May 17, 2016.

40) Email from Sergeant Funk to Pamela C. Dausman dated May 19, 2016.

41) Email from Sergeant Funk to Pamela C. Dausman dated May 19, 2016.

42) Email from Sergeant Funk to Pamela C. Dausman dated May 22, 2016

43) Emails (2) from Sergeant Funk to Pamela C. Dausman dated May 23, 2016.

44) Emails (4) from Sergeant Funk to Pamela C. Dausman dated May 24, 2016.

## SUMMARY OF INTERVIEWS

Sergeant Charles Funk—interviewed April 26, 2016

Sergeant Funk claims that he was recently passed over for a promotion to Lieutenant due to his race and in retaliation for making complaints that officers in the Lansing Police Department treat citizens differently based on race. (Tab 1). Sergeant Funk reported his complaint of race discrimination and retaliation to Mary Riley, Director of Human Resources for the City of Lansing, in April 2016. Ms. Riley asked Sergeant Funk to prepare a written statement of his allegations and Sergeant Funk submitted that statement to Ms. Riley on April 12, 2016. (Tab 1).

Sergeant Funk has been with the Lansing Police Department for approximately eighteen and a half years and was promoted to the rank of Sergeant in September 2012. At the time that this complaint arose, Sergeant Funk was assigned to Detention. Sergeant Funk has worked in other positions for the Police Department, including Road Patrol, the Detective Bureau, and Undercover.

Sergeant Funk discussed the promotion process. Sergeants take the Lieutenant Assessment Test, which is an all-day test consisting of several components, including written and interview portions. Sergeants are ranked according to the scores they received. The first five Sergeants with the highest scores are placed in the "A" Band, while the remaining Sergeants are placed in the "B" Band. Promotions are taken first from the "A" Band and once all of the individuals who have tested into that category have been promoted or placed into other positions, the top five individuals in the "B" Band will move into the "A" Band for placement. A copy of the 2014 Lieutenant scores is found at Tab 10. The Lansing Police Supervisory Division Agreement sets forth the promotion process at pages 35-37. (Tab 2). The Agreement does not specify what criteria Chief Yankowski must consider when deciding who to promote from the Band. The Agreement does not require Chief Yankowski to promote in order of test scores.

Sergeant Funk advises that he was in the third spot in the "B" Band when the 2014 Lieutenant scores were established. (Tab 10). Other individuals in "B" Band were Michelle Spoelma, Traci Ruiz, Ryan Cressman, and Rodney Anderson. (Tab 10). Ryan Cressman was promoted off of the previous promotional scoring list, which moved Robert Backus into the fifth position in the "B" Band. (Tab 10).

Chief Yankowski called Sergeant Funk to his office in early April 2016, to notify Sergeant Funk that he had decided to promote Sergeants Rodney Anderson and Robert Backus to the two open Lieutenant positions.  Chief Yankowski had decided not to promote Sergeant Funk to either of these positons.

Chief Yankowski explained why he decided to promote Rodney Anderson (African-American) and Robert Backus (Caucasian) into the open Lieutenant positions.  Sergeant Anderson had good community involvement, including engagement with a group called "GREAT," which is a gang-resistance program.  Sergeant Anderson travels throughout the area promoting the program and working with kids to keep them out of gangs.  Sergeant Backus was in charge of the Violent Crime Initiative.  According to Sergeant Funk, Chief Yankowski started the Violent Crime Initiative for Sergeant Backus and chose Sergeant Backus to lead the team approximately two or three years ago.

Chief Yankowski also told Sergeant Funk that Sergeants Anderson and Backus did not have pending Internal Affairs complaints against them.  At the time of the promotional decision, Sergeant Funk had three pending Internal Affairs complaints.  (Tabs 16 & 18).

Later that same day, Sergeant Funk emailed Chief Yankowski and asked to meet.  (Tab 32).  Sergeant Funk asked Chief Yankowski why he did not receive either one of the Lieutenant positions.  Chief Yankowski reiterated that Sergeants Anderson and Backus had significant community involvement, volunteered to take on additional responsibility at the Department and that they put in a lot of hours and got rewarded for that.  Sergeant Funk noted that Chief Yankowski also works a lot of hours and seems to reward other employees who are invested in the Department.  During the discussion, it became clear that Sergeant Funk did not necessarily question Sergeant Anderson's promotion to the rank of Lieutenant, but instead questioned Chief Yankowski's decision to promote Sergeant Backus to rank of Lieutenant.[2]

After the 2014 Lieutenant Assessment Test, Sergeant Funk learned that Sergeant Backus earned a relatively low score.  Sergeant Funk says that this surprised him, as well as other Sergeants who took the test.  Sergeant Funk and other Sergeants thought of Sergeant Backus as Chief Yankowski's "boy," because Chief Yankowski assigned Sergeant Backus to Internal

---

[2] Nevertheless, Sergeant Funk mentioned in an email dated May 22, 2016 (Tab 42), that Sergeant Anderson had a subject hang himself and die before he was promoted to Lieutenant. Sergeant Anderson's Promotional Review shows that there was a complaint involving an in custody death in April 2015.  (Tab 20).  The complaint was not sustained.

Affairs and sent him to the Michigan State University Staff and Command School immediately after his promotion to Sergeant.

Sergeant Funk believes that Chief Yankowski typically moves individuals to Internal Affairs that he likes the most. After learning of Sergeant Backus's low Lieutenant Assessment Test score, he wondered how Chief Yankowski would get Sergeant Backus promoted to a Lieutenant position.

Sergeant Funk questioned how he could shine as an employee assigned to work in Detention and did not believe he could fairly compete for the rank of Lieutenant with someone like Sergeant Backus, who was assigned to the Violent Crime Initiative Team and had more visibility in the Department and in the Community. Sergeant Funk acknowledged that Sergeant Anderson was also assigned to Detention when Chief Yankowski decided to promote Sergeant Anderson.[3]

Sergeant Funk maintains that during his years at the Lansing Police Department, he worked additional hours and volunteered. After his promotion to the rank of Sergeant, Sergeant Funk decided that he wanted to spend more time with his family. Sergeant Funk feels like he is being punished for not volunteering to take on additional duties and for wanting to spend time with his family.[4]

Sergeant Funk has spoken with someone outside of the Lansing Police Department regarding his race discrimination and retaliation complaint. Sergeant Funk did not disclose the name of this person. This person advised Sergeant Funk that he should tell Chief Yankowski that he was upset by the promotion decision. Sergeant Funk and Chief Yankowski again discussed the promotion decision by phone. (Tab 33). Sergeant Funk described this conversation as more confrontational. Sergeant Funk again asked Chief Yankowski to explain his decision not to promote Sergeant Funk to the rank of Lieutenant.

Sergeant Funk says that he told Chief Yankowski, "Don't penalize me for my family," and challenged Chief Yankowski's statement that other promotions would be opening up in the future. Sergeant Funk told Chief Yankowski that he did not think that he would ever be promoted. In response, Chief Yankowski asked, "Are you going to sue me because I didn't promote you?" Sergeant Funk did not directly respond to this question, but brushed off the

---

[3] It is my understanding that everyone "takes a turn" in Detention.
[4] This complaint is not related to race or retaliation for making previous complaints.

comment.  Sergeant Funk says that he has great respect for Chief Yankowski, but also says he has always been at odds with Chief Yankowski.

Sergeant Funk recounted that Lieutenant Traci Ruiz seemed to have it out for him and issued several complaints against him that were referred to Internal Affairs approximately a week before Chief Yankowski was to make promotion decisions.  Sergeant Funk discussed one of the complaints that he says occurred because he called in sick on the day of annual training. Sergeant Funk says that he followed the sick policy protocol by advising that he was unable to attend.  Lieutenant Ruiz contacted him and asked him to bring in a sick slip for his time off even though he had not been absent from work due to illness for a period of three days or more.

Sergeant Funk called Lieutenant Ruiz back the following day and left a message, and returned to work on Wednesday with a sick slip as requested by Lieutenant Ruiz.  Nevertheless, Lieutenant Ruiz entered information in Blue Team that Sergeant Funk had violated the sick leave policy.  Sergeant Funk was upset that Lieutenant Ruiz entered this information in Blue Team, explaining that if the complaint is informational only employees are unable to challenge the entry of the information into the database and/or dispute that it is true or accurate.

Sergeant Funk understands that Chief Yankowski often contacts the person's direct supervisor to get input from them before making promotion decisions.  Sergeant Funk thought it was odd that Lieutenant Ruiz had written him up for several complaints immediately before Chief Yankowski made his promotion decision.  Sergeant Funk disputes the complaints made against him and claims that no other Sergeant has been charged with these offenses.  Sergeant Funk also disclosed that fellow Sergeants Ryan Wilcox and Katie Diehl filed other reports against him in Blue Team that have resulted in Internal Affairs' investigations.  **(Tab 18)**.

Sergeant Funk once considered Lieutenant Ruiz a friend, but that relationship changed in March 2016.  Lieutenant Ruiz asked Sergeant Funk if he was planning on staying in Detention, as his three year period for working in that position was set to expire.  Initially, Sergeant Funk was agreeable to staying in Detention, but later changed his mind and asked to be put back on Road Patrol.  Although Sergeant Funk has not had any direct conversations with Lieutenant Ruiz regarding his decision not to stay in Detention, he believes Lieutenant Ruiz is holding this against him and that the Internal Affairs' complaints open against him are a result of this change in their relationship.  Sergeant Funk last worked in his position in Detention on April 16, 2016, and returned to Road Patrol on April 30, 2016.

Sergeant Funk said that he is not claiming that Lieutenant Ruiz entered complaints against him due to his race. Sergeant Funk reported that Lieutenant Ruiz told him before her promotion to Lieutenant in 2015 that Chief Yankowski only promotes minorities if the City tells him to and that he will not promote Sergeant Funk. Sergeant Funk's May 24, 2016, email (**Tab 44**) claims that the City forced Chief Yankowski to promote a minority in 2014 (Lieutenant Hung Tran) because he had promoted so many white males off the last list.

Sergeant Funk recently learned of yet another Internal Affairs complaint filed by Lieutenant Ruiz. Sergeant Funk did not know the details of the complaint, but thought it was a Class B offense. (**Tab 18**).

Sergeant Funk filed a grievance contesting Chief Yankowski's decision not to promote him to Lieutenant based on test placement. Although the Agreement does not say that Chief Yankowski is required to promote employees in order of their test scores, Sergeant Funk maintains that Chief Yankowski promoted employees in the "A" Band in the order of their test scores and that he should do the same for the "B" Band. Chief Yankowski denied the grievance because the Agreement does not require him to promote in order to test scores. The Union has decided to continue pressing the issue on Sergeant Funk's behalf.

Sergeant Funk also discussed Sergeant Michelle Spoelma (Caucasian) and questioned whether she should be on the 2014 Lieutenant Promotion Roster. Although Michelle Spoelma took the Lieutenant Assessment Test, she does not hold a Bachelor's degree, which is required for promotion to Lieutenant under the language of the Agreement. (**Tab 2**). Sergeant Funk said that Chief Yankowski went to bat for Sergeant Spoelma with the City and asked to have her be considered for promotion to Lieutenant. The City, however, advised that Sergeant Spoelma could not be considered due to the lack of a Bachelor's degree.

Sergeant Funk believes that Chief Yankowski treats him differently. He cited to the example included in his written statement (**Tab 1**) about the complaint from the Neighborhood Watch Captain, who complained about how Sergeant Funk behaved during a neighborhood watch meeting and how he handled a potential trespassing situation. Sergeant Funk was troubled that Chief Yankowski had learned about these complaints but did not come to Sergeant Funk to further investigate them or find out Sergeant Funk's side of the story. Sergeant Funk can only believe that Chief Yankowski treats him differently based on his race, because he cannot think of any other reason why this would occur. In a May 24, 2016, email, Sergeant Funk said:

> Anyones [sic] pride would be hurt if/when they were passed over
> for a promotion they felt they deserved. I am no different. What
> sets me apart in this particular situation is I can provide
> documented proof of unequal treatment based on discrimination,
> whether it is race based or not. (Tab 44).

In reference to the then pending Internal Affairs complaints, Sergeant Funk noted that Sergeant Wilcox (Caucasian), who also works in Detention, was the person who reported on Blue Team that Sergeant Funk did not complete the attendance logs. Sergeant Funk says that Sergeant Wilcox was late to work at least two times on the following dates: March 11, 12, 13, 19, 24, 30, and 31, and April 1 and 5. Sergeant Funk also claims that Sergeant Wilcox often does not wear his uniform while he is working and does not believe that Sergeant Wilcox has been disciplined for either one of these offenses. Chief Yankowski is always on Sergeant Funk's case and he does not believe that other employees in the Department have gotten written up for the sorts of offenses that are currently pending against him.

Sergeant Funk says that he feels like Chief Yankowski has retaliated against him for making complaints that Caucasian Officers in the Department are not treating African-American citizens fairly and that they are improperly arresting African-American citizens.

Sergeant Funk called Chief Yankowski and asked to sit down and discuss his concerns about these issues with him in fall 2014 and spring 2015. A copy of emails that Sergeant Funk provided to show that he asked to speak about these issues is attached at Tabs 29-31. The emails do not specifically reference complaints related to policing in the Department, but mention "issues," "sensitive concern," and "information of a serious nature."

Sergeant Funk says that in response to his complaint, Chief Yankowski told Sergeant Funk to report these concerns to his Captain, who was then Daryl Green, and told him to keep up the good work. Sergeant Funk did not report his concerns that Caucasian Officers were treating African-American citizens unfairly to Captain Green, saying that Captain Green was often not responsive to complaints and did not provide assistance when requested.

Sergeant Funk also provided two versions of an Incident Report for Incident Number: LLA140308001971. (Tab 27). The first version of the Report was printed on 3/9/14, 10:45, and contains handwritten notes and questions. The second version of the Report was printed on 3/9/14, 18:32, and appears to be the final version. Sergeant Funk pointed out that information in the Report had been changed as to Narrion Lamont Caston, and he questioned why that occurred.

Although Sergeant Funk implied that the officers involved had done something wrong, he acknowledged that he did not enter a complaint in Blue Team about this particular event at any time. Instead, a review of Sergeant Funk's disciplinary history shows that Captain Southworth entered a complaint in Blue Team due to Sergeant Funk's failure to contact the officers involved to correct deficiencies in the report and allowing the inadequate report to move to the prosecutorial stage. (Tab 18). Additionally, the complaint says that Sergeant Funk did not communicate problems about this report to the next Sergeant on duty.[5] (Tab 18).

The complaint was classified as "informational only" and Sergeant Funk was not disciplined for this incident. Sergeant Funk maintains that Chief Yankowski was involved in revising the Incident Report. However, Blue Team and the report do not show any connection to Chief Yankowski. (Tabs 18 & 27).

Sergeant Funk admitted that he has not reported these concerns about improper policing to anyone else in the Department, believing that after he reported them to Chief Yankowski he did not need to take his reports any further. Nevertheless, he believes that Chief Yankowski is retaliating against him by denying the promotion to Lieutenant. Sergeant Funk wants to be promoted to the Lieutenant position and believes that he should have gotten the promotion as opposed to Sergeant Backus.[6]

### Chief Michael Yankowski - Interviewed April 26 and May 20, 2016

Chief Yankowski has been with the Lansing Police Department for the past 21 years and has been Chief of Police since April 19, 2013. Chief Yankowski denied that he has retaliated or discriminated against Sergeant Funk based on his race. Detention Officers recently filed a new Internal Affairs complaint against Sergeant Funk that arose when he allegedly failed to respond to the Detention Officers' requests for assistance when placing a person lodged at the jail in a restraint chair. (Tab 18). Sergeant Funk has shown a pattern of not responding to radio calls or requests for assistance during his employment with the Department.

---

[5] Sergeant Funk's May 22, 2016, email (Tab 42) says that he did not approve the charges in the initial Incident Report and Chief Yankowski was upset about that. Sergeant Funk says that Chief Yankowski made sure that changes were made to that report.
[6] Sergeant Funk also contests Sergeant Sileo's promotion, but I did not investigate that claim because the City did not request that to occur.

Chief Yankowski provided some history about the current promotional roster. When the Department was preparing to administer the Lieutenant Assessment Test in 2014, Sergeant Michelle Spoelma, who did not have a Bachelor's degree, asked through her Union representative if she should take the assessment test. Sergeant Spoelma did not want to test for the position if she would not be considered for a promotion. The Union claimed that others had tested without a Bachelor's degree. After discussion, the Union and the City agreed that a Bachelor's degree was not required and prepared, but did not sign, a Memorandum of Understanding to reflect that agreement. Sergeant Spoelma took the test and received the sixth highest score out of the group. When the "A" Band was exhausted, and Chief Yankowski was determining who fell in the next tier of five Sergeants, Janene McIntyre, then the City Attorney, advised that Michelle Spoelma was not eligible. The Memorandum of Understanding had never been executed and conflicted with the current Collective Bargaining Agreement that required applicants to have a Bachelor's degree before being promoted to the rank of Lieutenant. Sergeant Spoelma grieved that decision and it went to arbitration. The City won the arbitration and it was determined that the Agreement required an employee to have a Bachelor's degree to be promoted to the Lieutenant position. As such, the "B" Band, which became effective on July 6, 2015, consisted of Traci Ruiz, Charles Funk, Rodney Anderson, Rob Backus, and David Sileo. (Tab 13). Ryan Cressman had been promoted off the 2011 Roster and Jim Thornburg had retired. (Tab 13).

Sergeant Traci Ruiz was promoted from the "B" Band on September 19, 2015, which left Sergeants Funk, Anderson, Backus, and Sileo on the list. After deciding to promote Sergeants Anderson and Backus, Sergeants Funk and Sileo were left in the Band. Recently, Sue Graham, Labor Relations Manager for the City of Lansing, raised the issue of whether Michelle Spoelma should be included on the current Lieutenants' Promotional Roster prior to her attainment of a Bachelor's degree with some kind of notation that she is not eligible for promotion until she obtains that degree. It is anticipated that Sergeant Spoelma will have her Bachelor's degree before the current roster expires on March 31, 2017. Although the Collective Bargaining Agreement requires Sergeants who seek promotion to Lieutenant to have a Bachelor's degree, it does not prohibit Sergeants from being included on the roster without that degree.

The Agreement does not specify what criteria Chief Yankowski should utilize to evaluate candidates within the bands, and does not require Chief Yankowski to promote Sergeants in order of their test scores.

Chief Yankowski decided not to promote Charles Funk due to his lack of community involvement, and repeated disciplinary problems. Sergeants Anderson and Backus did not have pending Internal Affairs complaints against them, and both volunteered in the community and within the Department. Sergeants Anderson and Backus both have master's degrees. Although Sergeant Funk advises that he has a master's degree, he has not yet provided documentation of that degree to Chief Yankowski. When Chief Yankowski talked with Sergeant Funk about why he decided not to promote him to Lieutenant, he mentioned that Sergeant Funk called in sick on training days and called in sick again after they had rescheduled that training for Sergeant Funk.

Sergeant Anderson takes an active role in his position at the Department and is involved with GREAT. Sergeant Backus is a past Union President, volunteered in the Department and Community, was the first person to head the Violent Crime Initiative Team, worked in Internal Affairs for approximately two years as a Sergeant, and obtained executive level training at the Michigan State University Staff and Command School, which consists of 400 hours of higher learning for executives in law enforcement.[7]

Chief Yankowski is not involved in the Internal Affairs investigations, but is aware that they are pending. When the Department receives complaints regarding employees, Captains determine whether the complaint will be designated as informal or formal. Chief Yankowski only gets involved in complaints if the discipline imposed could be suspension or higher. In Chief Yankowski's opinion, employees who are repeatedly counseled for engaging in the same sorts of inappropriate behavior, such as absenteeism or sleeping on the job, should receive formal discipline if no improvement occurs. Sergeant Funk often misses training, calls in sick, does not answer his radio, and has no community outreach.

When Chief Yankowski is considering Sergeant promotions, he consults with the Captains for their thoughts on the promotion. The current Captains are: Darin Southworth; James Kraus; and Daryl Green. Captain Green began a military leave in January 2016, and will

---

[7] Implemented in 2014, the Violent Crime Initiative Team includes five officers. The officers work in undercover positions and in uniform. In addition, the unit engages in community outreach.

return to work in January 2017. Captain Green was not consulted with regard to the most recent round of Lieutenant promotions. However, Chief Yankowski consulted with Captain Southworth and Captain Kraus, and they both agreed that Sergeants Anderson and Backus should be promoted to Lieutenant.

Captain Green, who was Sergeant Funk's Captain when he was assigned to Detention, handled many of Sergeant Funk's disciplines and classified them as informal. In Chief Yankowski's opinion, some of those disciplines should have been formal disciplines, but he leaves that to the discretion of the Captains.

Sergeant Funk moved to Detention in mid-2013 per the Collective Bargaining Agreement, which provides that if there are no volunteers for Detention the least senior Sergeant will be drafted to the position. **(Tab 2)**. It is a two year draft minimum, but Sergeant Funk volunteered to stay in Detention for a third year.

In response to Sergeant Funk's claim that white officers are treating black citizens differently in their policing of the community, Chief Yankowski advised that he has not received any complaints from Sergeant Funk about specific incidents or officers who have engaged in this conduct. If Sergeant Funk is aware of complaints, he should be entering those complaints in Blue Team, as he is required to do as a supervisor. Chief Yankowski is not aware that Sergeant Funk has entered any complaints in Blue Team about this or that he has reported his complaints to Internal Affairs.

Sergeant Funk has never come to Chief Yankowski with specific claims about Police Officers within the Department policing differently based on race. Additionally, Sergeant Funk has never complained to Chief Yankowski that he was being treated differently based on race. Instead, Sergeant Funk has complained that others in the Department labeled him as a troublemaker and that they believe he is a corrupt cop. Sergeant Funk also made unspecific comments that LPD Officers were providing information to officers at other agencies and causing them to see Sergeant Funk as corrupt. Even then, Sergeant Funk did not identify specific employees or incidents, only making general statements. On those occasions when Sergeant Funk made these general comments to Chief Yankowski, Chief Yankowski told Sergeant Funk that he needed to provide specific information about his claims if he wanted them investigated. Chief Yankowski also suggested that Sergeant Funk report his claims to Internal Affairs. Sergeant Funk did not do that. Sergeant Funk has also complained to Chief Yankowski that he

has been treated differently based on his race by Meridian Township Police and East Lansing Police Department. Chief Yankowski advised Sergeant Funk that he should file complaints with those departments.

Chief Yankowski gave suggestions to Sergeant Funk about ways that he could improve his performance and his chances of promotion: getting involved in the community and volunteering for extra duties at the Department.

Sergeant Funk also alleges that then Captain Yankowski did not talk with Sergeant Funk about complaints received from citizens. Adam Hussain, who is now a City Council Member, complained that when Sergeant Funk attended a neighborhood watch meeting, he gave the impression that he did not care about the community and left a bad image for the Lansing Police Department. After Mr. Hussain reported this concern to then Captain Yankowski, Captain Yankowski recalls having coaching sessions with Sergeant Funk about how he could improve relations with the community.

Chief Yankowski talked with Sergeant Funk on or about April 5, 2016, and they rehashed the reasons that Chief Yankowski did not promote Sergeant Funk. Chief Yankowski asked, "Are you saying I didn't promote you due to race, gender, or ethnicity?" In response, Sergeant Funk said, "No, that's not what I'm saying, but I am being passed over."

Chief Yankowski also spoke to his decision to send Lieutenant Tom Fabus to FBI School, a three month program. Chief Yankowski first offered this opportunity to Captain Southworth and Captain Green. Captain Southworth declined the opportunity because he believed it would interfere with his family. Captain Green said that he wanted to attend the Senior Management Police Institution class that was offered in Boston.[8] Chief Yankowski then offered the opportunity to Lieutenant Tom Fabus, who was one of the handful of people left on the Captain promotion list. Lieutenant Fabus accepted the opportunity. Any leader strives to foster those who have passion and skills for the job and Lieutenant Fabus showed that dedication.

Regarding Chief Yankowski's decision to send Sergeant Backus to the Staff and Command School at MSU, when he was a newer Sergeant, he acknowledged that Sergeant

---

[8] Later, Captain Green advised that he had changed his mind and wanted to attend the FBI School. When the FBI School next becomes available, the Department is planning to send Captain Green to that school.

Backus was one of the first Sergeants to attend this school. Lieutenants had either already gone to the MSU Staff and Command School or they were retiring within the next two years. The MSU Staff and Command School lasts from January through June, and students attend class every other two weeks during that time period.

### Captain Darin Southworth - Interviewed May 4, 2016

When deciding promotions from Sergeant to Lieutenant, the Chief is required to follow the Collective Bargaining Agreement, which instructs that those with the top five test scores are placed in the "A" Band. The Chief must select a candidate from within that band until that band has been exhausted. The next tier of candidates for promotion is created from the "B" Band. The criteria that the Chief reviews to make a selection from within the applicable band is not identified in the Collective Bargaining Agreement. (Tab 2). However, Captain Southworth understands that the Chief uses the following criteria: merit, work record, good work ethic, respect of peers, objectivity, sacrifice and giving back to the community and the Department, a self-starter, and the ability to meet deadlines.

Captain Southworth explained that because there are only eight Lieutenant assignments within the Department, the selection of the appropriate candidate sometimes boils down to the fit and personality of individuals for the open position. Currently, there are four Lieutenants in Patrol, one in Internal Affairs, one in Detention, one in Special Operations, and one in Central Records.

Captain Southworth agreed that Chief Yankowski always consults with him on his promotion decisions for Lieutenant. Sergeant Anderson was awarded a promotion to Lieutenant in the Patrol Unit. Captain Southworth said that Sergeant Anderson had some growing issues when he first came to the Department, but he is doing well, is open to feedback, has a passion for the job and has earned it.

Captain Southworth described Sergeant Backus as a phenomenal employee and deserving of the rank of Lieutenant. Sergeant Backus has run the Violent Crime Initiative Team. Captain Southworth had the following things to say about Sergeant Backus: he's unrivaled in accountability, responsive, networks within the community and the Department, has a good work ethic, passion for his job, is a team builder, and good at working with other agencies in the area. Sergeant Backus will be the Lieutenant in Special Operations and believes that this will be a

seamless transition for Sergeant Backus due to his experience running the Violent Crime Initiative Team. He is levelheaded, good with people, and has experience with Narcotics, the Tri-County Metro Narcotics Squad, and drug trade investigations. Additionally, Sergeant Backus is a trainer and presenter on how to conduct these investigations.

Captain Southworth provided the following thoughts and opinions about Sergeant Funk: Sergeant Funk is smart enough to achieve higher education, but he doesn't bring this back to his work. Captain Southworth believes that Sergeant Funk has been accepted into a doctoral program for psychology. Although Sergeant Funk is likable, he is irresponsible, repeatedly fails to take care of small things that are part of his duty, falls asleep on the job, and sometimes drifts off to sleep while you are talking with him. He also has poor nonverbal cues. Sergeant Funk has no engagement, does not interact with his staff, sits in his office during his shifts in Detention, as opposed to interacting with the Detention Officers. The Department encourages leadership qualities in their employees, but Sergeant Funk will not step up to the plate.

Captain Southworth advised that as a supervisor you have to lead and communicate with your subordinates. Although Sergeant Funk is smart and writes good reports, he is not accountable to his people. Sergeant Funk continues to let people down because he doesn't own his faults and cannot embrace leadership. Sergeant Funk has told Captain Southworth that it is not his style to engage with others; however, that is what is required to move up in the ranks at the Department.

Additionally, Sergeant Funk has missed opportunities to be a leader and to improve his work performance. Captain Southworth has told Sergeant Funk on numerous occasions that his position requires him to learn how to deal with people and be a leader.

Captain Southworth believes that Sergeant Funk's wife has affected his work life. Captain Southworth is disappointed in Sergeant Funk and says that Sergeant Funk has not earned a promotion to rank of Lieutenant. He went so far as to say that Sergeant Funk is the very last person on the list that he would promote to that position.

Captain Southworth does not believe that Chief Yankowski has a personal relationship with Sergeant Backus that would have influenced his decision to promote him to the rank of Lieutenant. Chief Yankowski does not have personal relationships outside of work, and although Captain Southworth believes that Chief Yankowski likes Sergeant Backus, he believes it would only be due to the quality of his work.

The Violent Crime Initiative Team started after the Jet's Pizza robbery near Frandor that occurred in November 2013. Two men went into the Jet's Pizza on Clippert and ordered pizzas and then robbed the two women working there, beating them severely. Tom Fabus and Bill Burns from the Lansing Police Department and Frank Williams from the Michigan State Police worked together to start the unit that was dedicated to the prevention of violent crime. Two individuals were considered for heading that Unit, Sergeant Backus and Sergeant Del Kostanko, who has since retired. Sergeant Backus was chosen for the position and has done very well. The Violent Crime Initiative Team was officially launched on May 2, 2014. Sergeant Backus earned the position and it was not created for him. Sergeant Nick Hughett is Sergeant Backus' successor for this position.

Captain Southworth shared his thoughts with Chief Yankowski about Sergeant Funk and Chief Yankowski did not seem surprised about Captain Southworth's opinion of Sergeant Funk. Sergeant Funk has never contacted Captain Southworth to complain that he has been discriminated against based on race or retaliated against for making previous complaints. Captain Southworth is not aware of complaints that officers within the Department treat citizens differently based on their race.

Captain Southworth does recall Sergeant Funk mentioning an improper police report in 2013 or 2014. Sergeant Funk made general comments that he did not know if the officers had a hang-up with a particular suspect or if they were targeting him for some reason, but Captain Southworth does not recall anything further about that conversation.[9]

Captain Southworth recalls Sergeant Funk complaining that the East Lansing Police Department was giving him a hard time. This occurred after Sergeant Funk went to East Lansing High School to mediate an issue that involved one of his stepchildren. Sergeant Funk did not hit it off well with the East Lansing Police Department and the Lansing Police Department received complaints that they believed Sergeant Funk was out of bounds in the way he behaved during that encounter.

Captain Southworth strongly disagrees with the comment that Chief Yankowski would not promote minorities unless he was forced to. Captain Southworth has been with the Lansing Police Department for approximately 23 years, and he is not aware of Sergeant Funk doing

---

[9] This may refer to the complaint in Blue Team regarding Incident Report LLA140308001971. **(Tabs 18 & 27).**

anything extra during his time with the Department, volunteering for more Department responsibility or volunteering within the community. Sergeant Funk is not a good communicator and does not do anything extra in his position.

Captain Southworth gave Sergeant Funk an opportunity to do additional work within the Department in 2013 and 2014, when he asked Sergeant Funk to work on preparing a Sergeant Training Manual. Sergeant Funk did not perform well and Sergeant Delke ended up doing most of the work. Sergeant Funk has been given opportunities to change his path and perform better within his position, but he does not take those opportunities.

## Captain James Kraus - Interviewed May 10, 2016

In Captain Kraus's 18 years as a Command Officer, it is unusual to get complaints against the Chief. Captain Kraus has worked for the LPD for the past 25 years and was promoted to the rank of Captain approximately three years ago.

When Chief Yankowski makes promotion decisions, he typically meets with the Captains to obtain feedback regarding his selection. Detectives and Sergeants are promoted in order of test scores, while Lieutenants and Captains are promoted by bands. The Chief has the discretion to promote individuals from within that band. Captain Kraus believes that the requirement that everyone in a band be promoted before filling in that band with the "B" Band is relatively new.

In Captain Kraus's opinion, Sergeants Anderson and Backus are head and shoulders above Sergeant Funk in terms of work performance, excellence within the Department, and community involvement. Sergeant Anderson is in charge of the GREAT Program, which encourages resistance to gangs and gang violence, while Sergeant Backus was in charge of the Victim Crime Initiative Team and performed well in that role. Sergeant Funk has never done anything during his career at LPD, but show up for work. Captain Kraus says that Sergeant Funk has not volunteered at any time that he has been at the Department to do anything above and beyond what is required of him during his shift.

Captain Kraus noted that two of the Internal Affairs investigations have been completed and that those complaints have been sustained against Sergeant Funk. Captain Kraus did not believe that the complaints against Sergeant Funk had anything to do with the Chief's decisions to promote, noting that no one at the Detention level would be aware of the Chief's long-term plans until the calls advising of who has been promoted were made. No one would know what

the Chief was going to do with regard to promotions. As such, it did not seem probable that Lieutenant Ruiz entered complaints in Blue Team to hurt Sergeant Funk's chances of promotion. Supervisory employees are under a duty to report complaints and investigate those complaints, and Lieutenant Ruiz would have been acting in that capacity.[10]

Captain Kraus recalls attending a round table with Chief Yankowski and Captain Southworth where they discussed the changing shift configuration and creating assignments that would begin at the end of May 2016. Chief Yankowski made comments about who he thought should be promoted to the rank of Lieutenant and asked whether Captains Southworth and Kraus agreed. Both of them agreed with Chief Yankowski's assessment.

Captain Kraus described Chief Yankowski's general philosophy as "how do people earn the opportunity to move up?" Chief Yankowski does not focus on the negatives. Chief Yankowski is a hard worker and cares about what is good for the Department and serving the community.

Captain Kraus is not aware that Sergeant Funk has ever forwarded allegations of unfair treatment of citizens based on their race against officers from the Department. However, if Sergeant Funk had become aware of that information as a supervisory employee, he should have entered a complaint in Blue Team that would be sent up the chain of command for determination on whether further investigation of the complaint was needed. Additionally, if employees received citizen complaints they have a duty to forward those complaints onward for investigation.

---

[10] It should be noted that Sergeant Funk's disciplinary history shows that the most recent complaints against Sergeant Funk were entered as follows:

- March 15, 2016/1.38 - Use of Department Equipment/entered by Lt. Traci Ruiz. Witnesses identified as Sergeant Katherine Diehl and Detention Officer Jason Paul Davis.
- March 18, 2016/1.10 - Unsatisfactory Performance/entered by Lt. Traci Ruiz. Witnesses identified as Sergeants Ryan Wilcox and Katherine Diehl.
- March 21, 2016/1.10 - Unsatisfactory Performance/entered by Lt. Traci Ruiz. Witness identified as Sergeant Ryan Wilcox.
- March 23, 2016/1.01 - Violation of Rules - Informational Only/entered by Lt. Traci Ruiz. Witness identified as Sergeant Guy Eric Pace.
- April 14, 2016/1.52 - Conduct of Supervisors/entered by Detention Officers Robert Davis, Kristin Hudson, and Patricia Layne, and Police Officer Eric Boswell.

Captain Kraus agreed that when Sergeant Backus was assigned to lead the Violent Crime Initiative Team, there were some in the Department who believed that Chief Yankowski favored Sergeant Backus. However, Captain Kraus disagrees with this and says that Chief Yankowski's decisions are driven by who is best to go into the assignment and will be the most successful. Chief Yankowski is looking for employees who are accountable, have good work ethic, and go above and beyond to serve the Department and the community.

Captain Kraus noted that Sergeant Funk could have volunteered to take on additional duties, such as on the Tactical Team, Honor Guard, Dive or GREAT. However, Sergeant Funk has not volunteered to be involved in any of those areas at the Department.

Captain Kraus is aware that there have been some negative interactions between Sergeant Funk and employees of the East Lansing Police Department and Meridian Township Police. Captain Kraus noted that this does show a pattern and that intervention may be necessary if further problems occur.

### Lieutenant Traci Ruiz - Interviewed May 4, 2016; May 26, 2016

Lieutenant Ruiz was promoted to Lieutenant in September 2015, and among her duties is supervision of the Detention Unit. Lieutenant Ruiz has known Sergeant Funk for many years and is aware that there are some rumors circulating about him in the Department. However, Lieutenant Ruiz does not take rumors into consideration when dealing with subordinates, and focuses on the tenor of their interactions while in the workplace.

Lieutenant Ruiz said that Sergeant Funk's personal issues sometimes interfere with his work and she has told him several times that he needs to be "present" when he is on duty. Staff in the Detention Center complained to Lieutenant Ruiz on several occasions that Sergeant Funk was not doing his job and was not backing them when he was working. It's a relatively small work group in Detention, consisting of three Detention Officers typically and the Sergeant on duty.

Lieutenant Ruiz also received complaints from other Sergeants assigned to Detention that Sergeant Funk did not complete daily assignments, which often required the Sergeant coming on to the next shift to perform additional duties. When Lieutenant Ruiz was promoted in September 2015, Sergeant Funk was the most senior Sergeant in Detention. Lieutenant Ruiz was surprised that Sergeant Funk often failed to perform minor tasks that were a part of his shift on a regular

basis, because he had the most experience in the position. Lieutenant Ruiz, when receiving complaints from Detention Officers and other Sergeants in Detention, would ask them to talk to Sergeant Funk directly to address the issues first. Many of them were not comfortable doing this and commented that Sergeant Funk would not talk to them. Some of the Sergeants told Lieutenant Ruiz that their comments would simply fall on deaf ears.

Lieutenant Ruiz recalls that this pattern occurred for approximately five months. On occasion, Lieutenant Ruiz would stay after her shift to talk with Sergeant Funk about issues that were brought to her attention. She would advise Sergeant Funk of the complaint and he would attempt to justify his behavior. Sergeant Funk did not take the constructive criticism in a positive way so that he could move forward in his position.

Sergeant Funk often created difficulties when he called in sick, as this would impact scheduling for the other Sergeants who were on the shifts before and after Sergeant Funk. There were several issues that occurred in mid-March 2016, one of them involving an unsecured weapon. Sergeant Funk also missed his annual training and then missed it again when it had been rescheduled.

When Sergeant Funk's third year in Detention was set to expire, Lieutenant Ruiz asked if he wanted to stay in Detention. Sergeant Funk did not immediately answer Lieutenant Ruiz. Lieutenant Ruiz was later informed by Captain Kraus that Sergeant Funk could not stay in Detention because he had been drafted to that position and stayed an extra year. As such, Sergeant Funk was required to move to a different Department. Lieutenant Ruiz spoke directly with Sergeant Funk about this and said that she had learned that he could not stay in Detention per the information she had received from Captain Kraus. Sergeant Funk did not have any real reaction to this information and seemed to be in agreement. Sergeant Funk never advised Lieutenant Ruiz, and she did not receive information elsewhere, that Sergeant Funk had chosen to leave Detention.

Lieutenant Ruiz is not aware of complaints that Lansing Police Officers treat citizens differently based on their race. Lieutenant Ruiz did not have an opinion about who should have received the two promotions to Lieutenant, as Chief Yankowski does not consult her when making those decisions. Lieutenant Ruiz admitted that Sergeant Anderson had a better disciplinary record as compared to Sergeant Funk, but otherwise did not give an opinion regarding the recent promotions. Lieutenant Ruiz admitted saying that the Chief does not

promote minorities unless he is required to, but says that she made the statement before her September 2015 promotion to Lieutenant.

Finally, I asked Lieutenant Ruiz whether anyone reported that Sergeant Wilcox was late to work on any of the following dates: March 11, 12, 13, 19, 24, 30, and 31, and April 1 and 5. Lieutenant Ruiz did not receive any reports that Sergeant Wilcox was late to work during this time period, and had not seen any complaints entered in Blue Team. Additionally, Lieutenant Ruiz has not received any reports that Sergeant Wilcox does not wear his uniform while working.

## DETERMINATION

### A. Chief Yankowski's Decision to Promote Sergeants Anderson and Backus and Not to Promote Sergeant Funk Was Not Due to Race.

Race discrimination claims under the Elliott-Larsen Civil Rights Act ("ELCRA") may be based on direct or indirect evidence *Town v Michigan Bell Telephone Co*, 455 Mich 688, 694-695; 568 NW2d 64 (1997). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001).

In the absence of direct evidence, ELCRA discrimination claims are analyzed under the burden-shifting analysis set forth in *McDonnell Douglas Corp v Green*, 411 US 792, 802-803, 93 S Ct 1817, 36 L Ed 2d 668 (1973) and adopted by the Michigan Supreme Court in *Town*, 455 Mich at 695. The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Town*, 455 Mich at 695. If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant, who must set forth a nondiscriminatory reason for the adverse employment decision. *Id.* "Once the employer produces evidence of a nondiscriminatory reason for the [decision], *even if that reason later turns out to be incredible*, the presumption of discrimination evaporates." *Id* (emphasis supplied). The plaintiff then bears the burden of proving, by admissible evidence, that the defendant's nondiscriminatory reason for the employment decision was merely a pretext for discrimination, and that the true reason for the employment decision was motivated by the plaintiff's race. *Id.* at 697. A plaintiff has to show that unlawful discrimination was "a determining factor in the employer's decision." *Id.*

Here, Sergeant Funk has not provided information to demonstrate that his race was a determining factor in Chief Yankowski's decision not to promote him to Lieutenant, and to instead promote Sergeants Anderson and Backus.

Sergeant Funk cannot rely on Lieutenant Ruiz's statement that Chief Yankowski does not promote minorities unless he is forced to by the City to support his claim. First, this statement occurred before Lieutenant Ruiz was promoted to the rank of Lieutenant and occurred well before Chief Yankowski made the decision to promote Sergeants Anderson and Backus to Lieutenant in April 2016. Second, Lieutenant Ruiz is not a decision maker with regard to promotions to the rank of Lieutenant and does not have any direct knowledge of the reasons that Chief Yankowski decided not to promote Sergeant Funk but decided to promote Sergeants Anderson and Backus. "Statements by non-decision makers, or statements by decision makers unrelated to the decisional process itself" will not satisfy Sergeant Funk's burden of demonstrating that Chief Yankowski's decision was motivated by racial animus. *Geiger v Tower Auto*, 579 F3d 614, 620-621 (CA 6, 2009).

Additionally, a comparison of Sergeant Funk's work record to Sergeants Anderson's and Backus's work record shows that Sergeants Anderson and Backus have significant community and department involvement over and above what they are required to do to perform in their position. Sergeant Funk has not made additional contributions to the Department aside from working his normal shifts. This opinion is confirmed by Captains Southworth and Kraus.

Sergeant Funk has his own personal view that Chief Yankowski must have discriminated against him based on race, because he cannot think of any other reason that he is allegedly being treated differently. However, "mere speculation or conjecture is insufficient to establish a reasonable inference of [race] discrimination." *Sniecinski v Blue Cross and Blue Shield of Michigan*, 469 Mich 124, 140; 666 NW2d 186 (2003).

Sergeant Funk's claim that this is related to his race or to his assignment to Detention is unavailing as Sergeant Anderson is also African-American and was assigned to Detention at the time that Chief Yankowski decided to promote him to the rank of Lieutenant.

Understandably, Sergeant Funk is upset that he was not promoted to the rank of Lieutenant during the most recent round of promotions; however, Chief Yankowski did not violate the provisions of the Collective Bargaining Agreement and took the skills of the candidates into consideration when deciding who to promote.

**B. Chief Yankowski's Decision Not to Promote Sergeant Funk to the Rank of Lieutenant is Not in Retaliation from Making Previous Complaints that Lansing Police Officers Treat Citizens Differently Based on Their Race.**

Based on review of the materials provided, as well as information obtained during the interviews summarized above, there is no basis to conclude that Chief Yankowski's decision not to promote Sergeant Funk to the rank of Lieutenant had anything to do with previous complaints of Lansing Police Officers treating citizens differently based on their race.

To set forth a case of unlawful retaliation under the Elliott-Larsen Civil Rights Act, Sergeant Funk would have to show that he engaged in a protected activity that was known to Chief Yankowski, that Chief Yankowski took an adverse employment action against Sergeant Funk, and that there was causal connection between the protected activity and the adverse employment action. *DeFlavis v Lord & Taylor, Inc*, 223 Mich App 432, 436; 566 NW2d 661 (1997). Here, a review of the materials provided does not show that Sergeant Funk ever made a specific complaint to Chief Yankowski about improper policing at the Department.

In support of his claim, Sergeant Funk provided copies of three emails that he sent to Chief Yankowski where he requested to meet with Chief Yankowski to discuss what he referred to as issues, a sensitive concern, and information of a serious nature. None of the emails provided by Sergeant Funk specifically mention an incident about which Sergeant Funk complains. Sergeant Funk acknowledged that when he met with Chief Yankowski, he did not take further action to report complaints of improper policing in the Department. For example, by entering a complaint in Blue Team as he was permitted to do as a Supervisor or by lodging his complaint with Internal Affairs.

Chief Yankowski agrees that Sergeant Funk has come to his office on a few occasions within the last two years. However, these discussions were about Sergeant Funk's concern that other employees in the Department view Sergeant Funk as a corrupt cop and treat him differently based on that perception. Sergeant Funk has never complained to Chief Yankowski that he believed that he was being treated differently based on his race by other employees of the Lansing Police Department. Further, when Sergeant Funk has made general comments that he believes that Police Officers within the Department have been treating citizens differently based on their race, Chief Yankowski asked Sergeant Funk to provide specific examples of incidents that had occurred, so that the claim could be investigated. Sergeant Funk did not come forward

with that information so that Chief Yankowski could investigate those claims. Chief Yankowski also suggested to Sergeant Funk that he make a complaint to Internal Affairs if he felt more comfortable following that route. Sergeant Funk admits that he did not take any further actions with regard to these concerns.

Chief Yankowski noted that the discussions he had with Sergeant Funk chiefly concerned Sergeant Funk's perception that other employees at the Lansing Police Department were treating him differently based on their view that he was a corrupt cop. Those discussions did not concern Sergeant Funk's belief that he was being treated differently or, as he says, targeted due to his race.

Sergeant Funk's email of May 24, 2016, says, "since I was promoted to Sergeant, Yankowski made it a point to treat me differently based off of what others said about me. I can support this allegation because not once did he ever contact me or call me into his office to get my side of the story or attempt to clear issues up." (**Tab 44**). This is consistent with Chief Yankowski's recollection of their conversation and that Sergeant Funk was concerned that rumors were being spread in the Department.

Sergeant Funk also cites to issues surrounding Incident Report No. LLA140308001971 (**Tab 27**). However, a review of that Report, as well as information entered into Blue Team, does not show any connection to Chief Yankowski. (**Tabs 18 & 27**).

Additionally, Chief Yankowski did not take those discussions with Sergeant Funk into account when making his decision not to promote Sergeant Funk to the rank of Lieutenant. Chief Yankowski instead considered the contributions of the individuals to the Department and to the community, their disciplinary history, and their dedication to the Department. Chief Yankowski and Captains Southworth and Kraus all agree that Sergeant Funk has not taken steps to go above and beyond his normal duties to contribute to the Department or to contribute to the community and, as a result, this was the deciding factor in determining not to promote Sergeant Funk to the rank of Lieutenant.

## RECOMMENDATIONS FOR FUTURE ACTION

I do not recommend that you share a copy of this Report with anyone in the Lansing Police Department. I recommend that you meet with Chief Yankowski and Sergeant Funk individually to advise them that the charge of discrimination based on race and retaliation based

on previous complaints of improper policing could not be substantiated and that the matter is closed. Both should be informed that there is an expectation of confidentiality regarding this matter and that it is a continuing obligation.

The City should also advise Chief Yankowski and Sergeant Funk that it will not tolerate retaliation against any employee or any person who in good faith reports a claim of discrimination or retaliation based on previous activities. The City will also not tolerate any retaliation against an employee or other person who participated in the investigation as a witness or otherwise. Although Sergeant Funk's allegations of race discrimination and retaliation based on previous complaints of improper policing are not substantiated, Sergeant Funk should not be retaliated against in any way for making this report and decisions affecting his job condition should not be made or influenced by his report or the results of this investigation.

We also suggest the following:

- Nothing should be placed in the personnel file of either Sergeant Funk or Chief Yankowski regarding this complaint.
- Schedule separate meetings with Chief Yankowski and Sergeant Funk to advise them of the results of the investigation and to reiterate the City's policy regarding retaliation.

Finally, it should be noted that this investigation did not include Sergeant Funk's claim that Sergeant David Sileo was improperly promoted to Lieutenant. Sergeant Funk did not amend his complaint with Human Resources to include this claim and, as such, it is not part of this Report. If Sergeant Funk decides to challenge Sergeant Sileo's recent promotion that will need to be the subject of a separate investigation.

In the event that I obtain new information that is pertinent to this Report or the findings, I will advise you. Please feel free to contact me if you have any questions about the content of this Report or the investigation process. Foster, Swift, Collins & Smith, P.C. appreciates the opportunity to assist the City in this matter.

PCD:pmb
Attachments

Index of Materials Reviewed in Connection with Investigation:

1) Sergeant Funk's Undated Complaint of Discrimination/Retaliation.

2) Agreement between the City of Lansing, Michigan, and the Capital City Lodge No. 141 for Internal Order for Police Lansing Police Supervisory Division - July 16, 2009, through July 15, 2015.

3) LPD Administrative Procedure - Complaint Procedure No. 200-7.

4) LPD Administrative Procedure - Discipline of Personnel No. 300-13.

5) LPD Rules of Conduct by Class of Offense.

6) Discipline Matrix Chart.

7) LPD Personnel Snapshot - April 1, 2016.

8) LPD 2008 Promotional Process Lieutenant

9) Lieutenant Scores for April 2010, through March 31, 2012.

10) 2014 Lieutenant Scores with 5 point seniority added.

11) A handwritten 2014 Lieutenant Promotional Chart showing the "A" Band and "B" Band. (Source of handwriting on the chart is unknown).

12) Chart showing Command Promotions from April 20, 2013, to May 28, 2016.

13) July 6, 2015, email from Sue Graham to Chief Yankowski advising which employees were in the next tier for Lieutenant promotions.

14) Training and Technical Services Posting 2016-17 dated April 6, 2016, Promotions and Transfers.

15) Training and Technical Services Posting 2016-26 dated May 10, 2016, promotions and transfers.

16) Sergeant Funk Promotional Review - April 2016.

17) Sergeant Funk's individual training record (excerpt).

18) Sergeant Funk's disciplinary history (excerpt).

19) Sergeant Funk's Field Training Book.

20) Sergeant Anderson's Promotional Review - April 2016.

21) Sergeant Anderson's individual training record.

22) Sergeant Backus's Promotional Review - April 2016.

23) Office of Internal Affairs Interoffice Memorandum regarding Internal Affairs investigation IA16-0018, dated May 17, 2016.

24) Office of Internal Affairs Interoffice Memorandum regarding Internal Affairs investigation IA16-0019, dated May 17, 2016.

25) Email from Adam Hussain to Chief Yankowski (then Captain) dated September 2, 2012.

26) Email from Adam Hussain to Chief Yankowski (then Captain) dated September 3, 2012.

27) Incident Report No. LLA140308001971 (unredacted copy)—initial report with handwritten questions and the final report with changes to charges and information related to Narrion Lamont Caston.

28) Email correspondence between Sergeant Funk and Chief Yankowski dated December 12, 2014.

29) Email from Sergeant Funk to Chief Yankowski dated January 15, 2015.

30) Email from Sergeant Funk to Chief Yankowski dated April 28, 2015.

31) Email from Sergeant Funk to Chief Yankowski dated March 12, 2016.

32) Email from Chief Yankowski to Sergeant Funk dated April 4, 2016.

33) Email from Sergeant Funk to Chief Yankowski dated April 5, 2016.

34) Email from Sergeant Funk to Pamela C. Dausman dated May 10, 2016.

35) Email from Sergeant Funk to Pamela C. Dausman dated May 12, 2016.

36) Email from Sergeant Funk to Pamela C. Dausman dated May 12, 2016.

37) Email from Chief Yankowski to Sergeant Funk, Sue Graham, and others dated May 12, 2016.

38) Email from Sergeant Funk to Pamela C. Dausman dated May 17, 2016.

39) Email from Sergeant Funk to Pamela C. Dausman dated May 17, 2016.

40) Email from Sergeant Funk to Pamela C. Dausman dated May 19, 2016.

41) Email from Sergeant Funk to Pamela C. Dausman dated May 19, 2016.

42) Email from Sergeant Funk to Pamela C. Dausman dated May 22, 2016

43) Emails (2) from Sergeant Funk to Pamela C. Dausman dated May 23, 2016.

44) Emails (4) from Sergeant Funk to Pamela C. Dausman dated May 24, 2016.