# EXHIBIT 25

*Internal Affairs Investigative Report Outline*

| | |
|---|---|
| **Internal Affairs Complaint #** | IA16-0018 |
| **Nature of Complaint:** | 1.38    Use of Department Equipment |
| | 1.01    Violation of Rules |
| | 1.52    Conduct of Supervisors |
| **Officer Involved:** | Sgt. Charles Funk 370 |
| **Date of Incident:** | 03/15/2016 |
| **Investigated By:** | Lieutenant Susan Baylis |
| **Date:** | 04/18/2016 |

**Background**
On 3/15/2015 at 06:50 hours Sgt. Diehl discovered an unsecured handgun located in Detention lock box #16. The weapon registered back to Sgt. Charles Funk. He worked the preceding shift.

**Investigator's Actions**
- Reviewed images captured and included in report.
- Reviewed special reports submitted by Sgt. Diehl and D. O. Jason Davis
- Reviewed email submitted by Lt. Ruiz regarding return of weapon to Sgt. Funk

**Special Report Submitted by Jason Davis**
See Attached

**Special Report Submitted by Katie Diehl**
See Attached

**Email Submitted from Lt. Ruiz**
RETURN OF HANDGUN:
I met with Sgt. Funk, on 3-17-16, at 1900 hrs. to return his found duty-issued firearm in the Detention Sergeants' office. He identified the weapon as his and asked where I had found it. I told him it was located by a fellow employee, in the office, unsecured, and no ammo. Sgt. Funk advised he was not missing the weapon, as he does not carry the gun off-duty for the safety of his children, and leaves ammo in his locker. Sgt. Funk did not expound upon reason why he would keep an unloaded handgun in Detention and I did not question him knowing the BT could possibly trigger an IA interview.

**Interview with Charles Funk**
Sgt. Funk was interviewed in the Office of Internal Affairs on 4/14/2016. Prior to providing the following information Funk was read the LPD Truthfulness warning. Below is a summary of his statement.

- Sgt. Funk has worked for the Lansing Police Department for 18+ years. He has worked in the Lockup in a sergeant capacity for 3 years. Predominately, he has worked the night shift.

- Sgt. Funk worked the night of the 03/14/16 and then was off for a couple days. He does not regularly carry his firearm <u>at work</u> or off duty.  He noticed he did not have his firearm with him and assumed it was in the lock box but he could not find the key. He noticed his firearm was missing at his daughter's doctor appointment. As a result of this he returned to work on the morning of the 15th to look for his firearm. He checked the lockbox in the Jail Sergeants office. He noticed three of the lock boxes in the Jail Sergeants office were locked and he assumed his firearm was in there, he did not have the key to it though. He checked his locker for the key and mentioned he even called Baryamas to see if the key was in a uniform shirt and then he left the work site. (Sgt. Funk never located the key, never located the gun and never advised anyone of either of the two items being unaccounted for). When he returned to work on the 17th Lt. Ruiz was in the office and returned his firearm to him.

- Funk was only concerned that he had misplaced the key.  He admits he did nothing to confirm his weapon was secure, he believed it was secure in a lock box. He did not notify anyone that he had misplaced his key or the weapon.

- Funk stated he normally does not carry his weapon loaded due to his kids. He keeps his ammunition in his locker but transports the firearm to and from work empty.

- Funk stated "I don't bring it (firearm) to work."

- When he has his firearm in the jail he does not have it loaded.  He keeps his ammunition in his locker. If he would have to respond to an incident in City Hall, Police Headquarters or report for any type of duty he would have to go to his locker first and put the components together. Funk states it is because he cannot leave the jail. Funk did not know LPD Policy 600-6 Firearms requires him to keep his firearm loaded with a round in the chamber while on duty.

- Funk indicated he was told in passing by Sgt. Backus (not as an order or part of any training or instruction, just a comment in conversation) that he was not required to have his firearm in the jail. Funk did not believe he has a duty to respond to anything outside of the jail and is not required to carry the handgun.

- When Funk has the firearm in the jail office with him it is only because he carries it up from his car.

- In violation of Policy 600-6 III, 1, a. Funk admitted he did not even have his firearm with him at the time of this interview and the firearm was secured at his residence. (Funk was on duty and had reported for his shift on the date of this interview.)  Funk reported to duty without this issued firearm. Funk indicates this is because Backus told him he was not required to carry it with him because he cannot leave the jail. Funk admits this information from Backus was not an instruction; "just a comment in conversation".

2

- Funk understood he could not take the firearm behind the booking counter in the inmate area. (All Lansing Police Officers are trained in the FTO program how to secure a firearm in the jail because weapons are not allowed in areas where detainees are being lodged.) Funk believes he has no obligation to respond to incidents from the jail. This is why he does not carry his firearm.

- Funk does not believe he violated the Firearms Policy 600-6 requiring officers to carry a weapon on duty because he cannot leave the jail and does not need his gun there.

- Funk was not able to speak at all to his duty to respond to an incident if something occurred in the police building while he was working or in City Hall.  He only would say he can't respond because he cannot leave the jail.

- Reference 600-6, IIV, E Funk initially stated although the gun was found unsecured in the lock box that he had it secured per the policy.  He then stated the Jail Sergeant's office in itself is a secure area and believed the gun was secured. Funk then digressed stating there were other unsecured firearms; including unloaded rifles and accessible ammunition at the range.  Unlike the range, the jail is secured.  He stated, "Yes, in theory" his weapon was secured. Funk stated, "Did I leave it loaded in the bathroom? No."

- Funk ultimately admitted in violation of policy 600-6 his gun was not secured to the extent it was accessible to no one but him. Funk admitted other people besides him and other sergeants have access to the lockbox area where his gun was secured. (Funk's firearm was located by Detention Officer Jason Davis.)

- Funk believed he should have received a phone call advising him he forgot his weapon.

- Funk did not believe he violated 1.38 Use of Department Equipment- relating to utilizing department equipment in accordance with procedures. In his mind he believed his firearm was secured. But admits it was accessible to others.

- Sgt.  Funks transcript is attached in its entirety and review of the entire transcript is strongly recommended.

**Special Report Submitted by Sgt. Rob Backus**
Based on information offered by Sgt. Funk during his interview, Sgt. Backus was requested to submit as special report to clarify and respond to information presented by Sgt. Funk. Sgt. Backus submitted his report on 04/15/16 under 1.41 Truthfulness  and 1.49 Accountability, Responsibility, and Discipline. The following is the questions and his responses to the special report request.

| SUBJECT: INTERNAL AFFAIRS INVESTIGATION – IA16-0018 |
| --- |

**DATE:**   APRIL 15, 2016

*Sgt. Funk left his handgun unsecured in the detention area. As a result of a subsequent interview Sgt. Funk has advised the Office of Internal Affairs that in a conversation he had with you some time ago stating,* **"I guess I was told I am not required to have my firearm so...."** *Also,* **"I conferred with my previous Union President and I was informed that I am not required to have that (firearm) or carry it."**

*When asked if there was some type of incident at work which required his response he stated he would have to go home and get his gun. To clarify he stated, "**I am simply going off what my past union president told me.**" Funk is stating you told him he is "**not required to carry a firearm in the jail on duty.**" This comment occurred sometime ago in a conversation you had.*

**Do you recall this conversation in detail as to what was discussed with Sgt. Funk regarding carrying his firearm? If so, please document everything you can in detail as to what was said.**

I do recall having a conversation with Sgt. Funk in regards to his gun while I was the union president. I do not remember the venue so it could have been either at the jail or on the phone. I recall the conversation as being one that came out a general talk about current issues and believe the jail memo banning supervisors from leaving the building may have prompted the talk. It was not a topic I contacted him to discuss specifically. During that time, I recall Sgt. Funk advising while his firearm was at his residence he did not keep it loaded. I also remember discussing what the requirement was were per policy for carrying your firearm in the jail and my thoughts were I couldn't recall a policy noting jail supervisor's weapon requirements.

**Did you ever tell Sgt. Funk he is not required to carry or have his firearm with him while he is on duty?**

No, I did not give Sgt. Funk any definitive answer or direction on what were the specifics requirements. Through the conversation, wearing or not wearing a firearm while in the jail was discussed in theory but at that time, I never reviewed policy and procedure to find specifics where this was addressed. One thought on this topic I recall, which may be overstated by Sgt Funk, is the idea that the jail supervisor in the past has been very particular with uniformed officers carrying firearms while in the secure detention area. Signs have been posted advising firearms are not permitted beyond a certain point and I recall a physical line on the floor as well. This was a topic then Sgt. Brian Ellis took very seriously and during this period I was reminded by detention staff of the policy on the occasion I cut through the juvenile room (unoccupied) with my weapon holstered.

**Did you ever discuss the separation of firearm and ammunition with Sgt. Funk as it relates to his on duty employments as a Sergeant with the Lansing Police Department?**

Yes, simply the idea Sgt. Funk separated his firearm and ammo while at home.

Conclusion: As is a common practice with union issues, it is typical for me to discuss what the issue is, what policy is and what practice is. I typically never delved further into an issue that came up as a topic of conversation unless a definitive answer was needed or there was an accusation involved. In this case, it was an unprompted and casual conversation about the topic and I never got the idea Sgt. Funk was going to base his behavior off our talk. I never left that conversation thinking I had given Sgt. Funk the authority to behave in any specific manner with his firearm and I never got the impression his carrying a firearm or not carrying a firearm was a serious issue. I took it as a casual topic where I expressed different opinions regarding what is currently in place and practiced in light of a new memo. I did not tell Sgt. Funk he was not required to carry a firearm. I never reviewed policy or internal jail policies. I have no idea if this topic is addressed to new jail supervisors. I also never paid specific attention to what each sergeant's practice was. I recall supervisors doing both and filling multiple roles on the detention floor so my perception was (and still is) each sergeant had their preference. I never investigated as to where their gun was if they were not wearing it.

**Evidence**
- Photos submitted with Blue Team entry

4

**Findings**

The complainant alleged that Officer Funk failed to secure his firearm in violation of LPD Rule of Conduct 1.38 Department Equipment. This investigation revealed Sgt. Funk's firearm was found unsecured. Even though it was in a lock box cubby in the Sergeants Office in the jail, this office is accessible to anyone with access to the jail including civilian staff. Sgt. Funk did not have his firearm secured so that it was accessible only to him and the weapon and key were unaccounted for, for a two day period. Funk failed to notify anyone regarding this.

What I find to be more disturbing is Sgt. Funk's failure to understand his responsibilities as a Detention Sergeant of the Lansing Police Department. Sgt. Funk is an 18 year employee with three years of service in the LPD Lockup. Sgt. Funk, along with all Detention Sergeants, was issued a Memorandum on 11-6-14 by Capt. Daryl Green stating, "Effective immediately all Detention Sergeants will remain on Police Headquarters/City Hall property throughout their shifts; unless an evacuation per LPD Policy 600-11 (City Hall/Police Headquarters Evacuation) or after obtaining expressed permission to leave…" Sgt. Funk has concluded as a result of this and a casual conversation with another sergeant, that he has no obligation to respond to an incident within the building he works as a Police Officer of the City of Lansing. If an active shooter incident broke out or and escape prisoner situation occurred Sgt. Funk indicated he would "want" to have his firearm but is going off the basis he cannot have a firearm in the jail. In the interview, Sgt. Funk mentioned that an armed prisoner could potentially be brought into the jail, pull a gun out of their behind and he would just be screwed because he is not allowed to have his firearm.

Sgt. Funk stated on two occasions during the interview that he usually does not have his duty firearm at work and he did not bring it with him on this date either.

LPD Police 600-6 Firearms specifies that a department issued gun will be carried with a round in the chamber while on duty. A sworn employee assigned to detention should be armed and utilizing the provided lockboxes to secure weapons as needed based on specific and current tasks he or she is working on the Detention Sergeant capacity.

When on duty as a Detention Sergeant, Funk is responsible to the Lansing Lockup; this includes all subjects lodged therein, the civilian staff, and trustees. Funk is responsible for the operations therein including such potential occurrences as prisoner evacuation, non-employees moving to and from the Lockup and the third floor, including bondsman, custodial workers, civilians, attorneys and other individuals utilizing services provided by the LPD Lockup. Lansing Police Officers; including all command positions have been sworn in and taken an oath to protect and serve for this Department and the community. For a supervisor to respond to work without their firearm and with the staunch belief that their firearm is not required or needed is a significant failure of a LPD Supervisor to effectively supervise a precinct, section, unit, squad, as appropriate.

Furthermore, upon taking the Sergeant Promotion Sgt. Funk is bound by the Sergeant III Job Description which states in part:

1. The position of Sergeant III within the Lansing Police Department, as a police

officer is a public service position based on trust, competency and credibility. It is critical that the individual holding the position have the desire and ability to perform and represent the department, on-duty as well as off-duty, in a manner that does not cause damage or endanger the loss of such trust and credibility with the public, government agencies, co-workers, or other law enforcement agencies.

2. The job of a Sergeant III is a first line supervisory position which is directly responsible for supervising line staff/officers in a Precinct or any other assigned area of the Department. ***Any Sergeant III must be able to function in the Precinct assignment.***

3. Monitor, direct and participate in providing police patrol and traffic-related services using standard police equipment and radios; following departmental policies and procedures to identify problems that need to be addressed by employees; increasing visibility; monitoring special situations and detecting crime and other service needs for assignment to employees.

4. Supervise or initiate the use of firearms, as appropriate.

The above major duties are supported by the following job tasks: K12, A5, A7 and A9- See attached Sergeant III Job Description.

It is the findings of this investigation in addition to a violation of LPD Rule of Conduct 1.38 Property and Equipment, Sgt. Funk is in direct violation of LPD Policy 600-6 firearms and LPD Rule of Conduct 1.52 Conduct of Supervisors:

   A. Supervisors must set a high standard for leading those for whom they have responsibility. Therefore, supervisors should not engage in the following:
   1. Failure to effectively supervise a precinct, section, unit, squad, etc., as appropriate.

**Rule Violation:** 1.38 Use of Department Equipment- Sustained
Employees shall utilize Department equipment only for its intended purpose and in accordance with established Departmental procedures and training, and shall not abuse, or negligently damage or lose Department equipment. Use of all Department equipment, materials, supplies, or property not specifically assigned to an individual employee or vehicle requires supervisory authorization from the employee's supervisor as well as the unit/division/supervisor the items are assigned to, absent extenuating circumstances. All Department equipment issued to employees shall be maintained in proper order. Employees shall report to their supervisor any defect or hazardous condition in Departmental equipment.

**Rule Violation:** 1.01 Violation of Rules-Sustained
Employees shall not commit or omit any acts which they know or should know would constitute a violation of any rules, regulations, procedures, directives, or orders of the Department.

**Rule Violation:** 1.52 Conduct of Supervisors- Sustained
A. Supervisors must set a high standard for leading those for whom they have responsibility. Therefore, supervisors should not engage in the following:
1. Failure to effectively supervise a precinct, section, unit, squad, etc., as

appropriate.

2. Knowingly or intentionally violating union contracts or Equal Employment Opportunity rules or engaging in inappropriate actions, comments, gestures, etc., that violate the standards of an equal employment opportunity, harassment-free, inclusive organization.

3. Abusive or derogatory language when addressing a subordinate.

4. Failure to accept and record all complaints.

**NOTE:**

As a result of the admissions by Sgt. Funk during this interview Sgt. Funk was advised verbally following the interview by myself and Sgt. Beasinger in the presence of Union Rep Hughett that he was required to carry or have accessible to him a loaded firearm as a responsibility of his role as Detention Supervisor. Additionally, Lt. Ruiz sent Funk a written directive which is attached to this report indicating the same and it read as follows:

> Charles-
> You are directed to have a loaded firearm locked in a Detention lock box during your work shift. There is potential for you to leave the building during emergent situations, which would require you to be armed, per policy, and/or AVI situation.
>
> Please also leave Detention keys at the end of your shift with Sgt. Katie Diehl. Thank you-
>
> Traci Ruiz
> Staff Services-Lieutenant
> Lansing Police Department
> 120 w. Michigan Avenue
> Lansing, MI 48933
> (517)483-4641

Respectfully submitted,

*Susan Baylis*
*Lieutenant*
*Internal Affairs*